**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Heather Key, Jacob Behr, Vivian Johnson,
Vanessa Agudelo, Linda Sarsour ,
Philip Mandelbaum, Beth Lauren Baum, and
Jacqueline Bourgeois,
individually and on behalf of
all others similarly situated,

                 Plaintiffs,

     V.

Governor Andrew Cuomo, Governor of the
State of New York;
Douglas A. Kellner, Co-Chair and
Commissioner, Andrew Spano,
Commissioner, Peter S. Kosinski, CoChair
and Commissioner, Todd D.
Valentine, Co-Executive Director and
Robert A. Brehm, Co-Executive Director,
individually and in their official capacities
at the New York State Board of Elections,
and the New York State Board of
Elections

                 Defendants

**A CIVIL ACTION**

EMERGENCY COMPLAINT SEEKING
RELIEF UNDER FRCP 65(B)

1

## COMPLAINT

Plaintiffs, by way of this Complaint against Defendants Andrew Cuomo, Douglas Kellner, Andrew Spano, Peter S. Kosinski, Todd D. Valentine, Robert A. Brehm, individually and in their official capacities as officers of the state of New York including, inter alia, the New York State Board of Elections, and the New York State Board of Elections state and allege claims against said Defendants based on their unlawful, arbitrary, capricious and wrongful decision to cancel the 2020 Democratic Primary Election for President of the United States. Specifically, the Plaintiffs allege as follows:

## INTRODUCTION

1. Plaintiffs, are all residents of the State of New York and are each registered voters who are registered with the Democratic Party of New York and are thereby entitled to vote both in general elections and in any and all Democratic Primary elections such as are held by the National Democratic Party, the Democratic Party of New York, the State of New York and the New York State Board of Elections.

2. In addition, certain of the Plaintiffs are delegate candidates who have expended significant time and resources in order to become  eligible to appear on the New York State Presidential Primary Ballot as supporters of Bernie Sanders and, if elected, to appear in that capacity at the Democratic National Convention.   While this action is NOT being brought on behalf of any such individuals AS delegates this information is included for purposes of transparency only.

3. Two of the Plaintiffs in this matter have qualified to appear on the New York State Presidential Primary Ballot as delegates of Bernie Sanders and, if elected, to appear in that capacity at the Democratic National Convention. These Plaintiffs have expended significant time and money to

qualify for the primary ballot however those interests are already the subject of a separate action currently before the Court (SDNY case - 1:20-cv-03325-AT).

4. All of the Plaintiffs herein are registered voters who have registered with the State of a New York and the Democratic Party for the State of New York. All of the Plaintiffs are thereby entitled to vote in any local, state or national election held by the State of New York or the Democratic Party whether said election is a primary or general election. Plaintiffs are individuals who are part of the estimated 6 million registered members of the New York Democratic Party who will be effectively disenfranchised if the Defendants are successful in their efforts to cancel the 2020 Democratic Presidential Primary Election.

## PRELIMINARY STATEMENT

5.  Throughout the Winter of 2020, the State of New York has been ravaged by the Covid-19 virus Pandemic which has infected over 1 million Americans and caused over 70,000 deaths nationwide. New York has been particularly hard hit by the Pandemic with an estimated 175,000 confirmed infections and nearly 14,000 deaths, more than any other state in the country.

6. In order to deal with the unprecedented challenges caused by the Pandemic, states have had to take drastic measures including requiring entire states such as New York to stay home from work and school for extended periods of time.

7. For example, in order to allow elections to proceed in the midst of the raging Pandemic, New York Governor Cuomo authorized elections to be held using mail ballots only and with no or very limited in-person voting.

8. In another virus related move, New York moved the Democratic Primary from its original date of April 28, 2020 to June 23, 2020  so that it would coincide with numerous congressional, State Senate, State Assembly and other local elections and therefore minimize the threat to the health and safety of New York voters and election workers.

9.Despite these safeguards, on April 3, 2020, Governor Cuomo signed a bill making New York Election Law Section 2-122-a (13) the law of the state. This law purported to give the New York State Board of Elections the discretion to arbitrarily and capriciously cancel the New York Democratic Primary Election if certain preconditions were met.

10. On April 27, 2020, the New York State Board of Elections' commissioners voted unanimously by resolution to discriminatorily and arbitrarily and unconstitutionally remove ten out of the eleven qualified candidates and their delegates  from the June 23, 2020 Democratic presidential primary, while allowing the other "down-ballot" elections to proceed.   Two of those Board members were de facto appointees of the Democratic Party of the State of New York.

11. The Plaintiffs are representative of the estimated 6 million registered voters who are members of the Democratic Party for the State of New York. EVERY one of whom stand to be disenfranchised *en masse* if the Defendants' actions are allowed to stand.  While in the case noted, supra, those actions have been theoretically reversed as the final edits are being put on this

complaint defendants are already publicly stating they plan to appeal the order compelling them to effectively undo their prior actions.

12. The Plaintiffs suit is essential because the actions of the Defendants violate the rights afforded to the Plaintiffs by the Constitutions of the State of New York and the United States of America.

   More importantly and unlike the aforementioned suit in the SDNY THIS Action is being brought strictly on behalf of every voter who would effectively lose their right to vote on June 23 for the Democratic candidate for President of the United States of their choice.

13. The Plaintiffs therefore seek to recover actual and other damages as well as declaratory, injunctive and equitable relief, together with court fees, attorney fees and costs, so as to ENSURE the New York State Democratic Presidential primary both takes place and is conducted in a manner that is both safe to voters and election workers and in accordance with the rules in place when candidates sought and GAINED access to the ballot.

14. Plaintiffs Heather Key, Jacob Behr, Vivian Johnson, Vanessa Agudelo, Linda Sarsour , Philip Mandelbaum, Beth Lauren Baum and Jacqueline Bourgeois bring this action both individually and on behalf of all similarly situated, alleging as for their Complaint against Defendants (defined herein) upon personal knowledge as to themselves and as to all other matters upon information and belief, based on, *inter alia*, the investigation made by their  attorneys signed below, as follows:

## **PARTIES**

15. Each of the Plaintiffs herein is a Citizen of the United States over the age of eighteen years.

16. Plaintiff Heather Key resides in Putnam County and is a registered voter in the 18th Congressional District.

17. Plaintiff Jacob Behr resides in Oswego County and is a registered voter in the 24th Congressional District.

18. Plaintiff Vivian Johnson resides in Suffolk County and is a registered voter in the 1st Congressional District.

19. Plaintiff Vanessa Agudelo resides in Westchester County .  She is registered voter in the 16th Congressional District.

20. Plaintiff Linda Sarsour resides in Kings County. She is a registered voter in the 9th Congressional District.

21. Plaintiff Philip Mandelbaum resides in Ulster County and is a registered voter in the 19th Congressional District..

22. Plaintiff Beth Lauren Baum resides in Kings County and is a registered voter in the 9th Congressional District.

23. Plaintiff Jacqueline Bourgeois resides in New York County and is a registered voter in the 12th Congressional District.

## DEFENDANTS

24. Defendant Andrew Cuomo is the current reigning Governor of the State of New York who is charged with oversight and administration of the Executive Branch of the State's government.  He is named herein in such capacity

25. Defendant New York State Board of Elections ("BOE") is an agency of the New York State government within the New York State Executive Department responsible for enforcement of the election laws. The BOE's website specifically acknowledges that the BOE is "vested with the responsibility for **administration and enforcement of all laws relating to elections in New York State**. . . **In addition to the regulatory and enforcement responsibilities the board is charged with the preservation of citizen confidence in the democratic process and enhancement in voter participation in elections."** (emphasis added)

26. Defendant Douglas A. Kellner is the Co-Chair and a Commissioner of the NYS BOE ("Kellner").

27. Andrew Spano is a Commissioner of the NYS BOE ("Spano").

28. Peter S. Kosinski is the Co-Chair and a Commissioner of the NYS BOE ("Kosinski")

29. Todd D. Valentine is the Co-Executive Director of the NYS BOE ("Valentine").

30. Robert A. Brehm is the Co-Executive Director of the NYS BOE ("Brehm").

31. Each of the Defendants are being sued in their individual and official capacities as executives, directors and officers of the NYS BOE.   Venue is further properly laid in the Southern District of New York because Defendants reside, are found, have agents, and transact business in this District, pursuant to 28 U.S.C. §1391.

32. The 11th Amendment to the United States Constitution does not bar this suit as this is a suit strictly between resident individuals and the State whereby citizens are seeking to assert and protect their federal constitutional rights from infringement by the State.

## JURISDICTION AND VENUE

33. This Court has federal question jurisdiction of the original action and of Plaintiff's action under 42 U.S.C. § 198 and 28 U.S.C. § 1331.

34. Declaratory relief in both actions is available pursuant to 28 U.S.C. §§ 2201 and § 2202.

35. The Court has ancillary jurisdiction over Plaintiffs and Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

36. Venue is proper in this district for both actions pursuant to 28 U.S.C. § 1391, as certain of the Plaintiffs live in this district and the acts and transactions that give rise to this action occurred, in substantial part, in this district.

37. Venue is also proper in this district in both actions under 28 USC Section 1391, because Defendants transact business in this District and the wrongful acts alleged herein had their wrongful effect or otherwise caused harm in this District.

38. The claims presented by this Complaint are ripe for adjudication because Plaintiffs are presently, gravely adversely affected by the Defendants' actions canceling the Primary election and, importantly, the Order in the existing case mentioned, supra, expressly was issued in consideration of the rights of both Delegates and candidates.  The rights of voters were not, per se, the subject of that order.   While Plaintiffs do not, presently, seek injunctive relief it is more than possible they will need to do so.

39. This Court has personal jurisdiction over Defendants at least because, on information and belief, these Defendants respectively in their official capacities have ongoing and systematic contacts with this District, have and maintain offices in this District, and have committed wrongful acts which both occurred within this District, and which have had an impact or effect in this District.

## THE FACTS

40. Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

9

41. The New York State Democratic Presidential Primary was originally scheduled for

April 28, 2020 (the "Primary Election").

42. Each Plaintiff was duly registered to vote in the Primary Election and to thus participate in the

selection of the Democratic candidate for President of the United States and to influence the

platform upon which the Democratic candidate would run his or her campaign.

.

43. The Democratic Party delegate selection rules provide that Delegates whose

candidate received 15% or more of the vote in a Congressional District will attend the

Democratic Party National Convention, presently scheduled for August 17-20 in Milwaukee (the

"Convention").

44. Delegates at the Convention assist in shaping the Democratic Party's rules and

platform and participate in nominating the Party's candidate for President of the United States.

45. Due to the COVID-19 Pandemic, the April 28 Presidential Primary was rescheduled by

Executive Order of the New York State Governor, Andrew Cuomo, to take place on the same date

as a previously scheduled New York State election for federal and state offices,

on June 23, 2020.

46. Under another Executive Order, 202.15, Governor Cuomo also provided that all New York

State voters could choose to vote by mail, so as not to expose themselves at the polls

to COVID-19 infection.

47. However, by an amendment to New York State's Election Law, signed by Governor Cuomo on April 13, 2020, it was provided that: "Notwithstanding any inconsistent provision of law to the contrary, prior to forty-five days before the actual date of a presidential primary election, if a candidate for office of the president of the United States who is otherwise eligible to appear on the presidential primary ballot to provide for the election of delegates to a national party convention or a national party conference in any presidential election year, publicly announces that they are no longer seeking the nomination for the office of president of the United States, or if the candidate publicly announces that they are terminating or suspending their campaign, or if the candidate sends a letter to the state board of elections indicating they no longer wish to appear on the ballot, the state board of elections may determine by such date that the candidate is no longer eligible and omit said candidate from the ballot; provided, however, that for any candidate of a major political party, such determination shall be solely made by the commissioners of the state board of elections who have been appointed on the recommendation of such political party or the legislative leaders of such political party, and no other commissioner of the state board of elections shall participate in such determination."

48. On April 27, 2020, Malcolm Seymour of the Foster Garvey law firm, as counsel for the Bernie Sanders campaign, wrote to the New York State Board of Elections: "Senator Sanders has duly qualified for placement on the Primary ballot as a candidate for the Democratic nomination to the office of President of the United States.  To get him on the ballot, the Campaign mobilized a vast network of volunteer circulators across New York's 27 congressional districts, gathering nearly 60,000 signatures for Senator Sanders and his 184 authorized pledged delegates.  On April 8, 2020,

Senator Sanders announced the limited suspension of his presidential campaign, emphasizing that he intended to remain on the ballot in upcoming primaries, gather delegates, and attend the Democratic National Convention, with an eye to influencing the party's platform.  Unlike most of the other major candidates who have conceded in this year's Democratic primary, Senator Sanders has not officially terminated his candidacy with the Federal Election Commission."

49. Attorney Seymour ended his April 27, 2020 letter with the following request on behalf of Candidate Bernie Sanders "that the Board either: (1) determine as a matter of law that § 2-122-A does not apply to announcements of campaign suspension made prior to April 13, 2020, the date of the law's enactment; or (2) exercise its discretion to keep Senator Sanders on the Primary ballot, in the interest of party unification."

50. On or about April 27, 2020, the New York State Board of Elections, acting by Defendants Kellner and Spano, announced it was canceling the Presidential Primary.

51. Defendant Kellner, revealing the full extent of his partisanship and capriciousness, stated to the New York Times: "What the Sanders campaign wanted is essentially a beauty contest that, given the situation with the public health emergency, seems to be unnecessary and, indeed, frivolous."

52. Candidate Bernie Sanders stated, via senior campaign advisor Jeff Weaver: "Today's decision by the State of New York Board of Elections is an outrage, a blow to American democracy ...  Just last week Vice President Biden warned the American people that President Trump could use the

current crisis as an excuse to postpone the November election. Well, he now has a precedent thanks to New York State."

53. Regarding the relief requested, Plaintiffs note that the Defendants have already argued by letter to this Court that it is too late for them to implement any remedy ordered, because the ballots have already been certified for the June 23 election.  Aside from the obvious fact that the Defendants themselves managed the timing so that the Plaintiffs and Plaintiffs would face an uphill battle redressing the grievous wrongs done them, Plaintiffs ask this Court to note that, just as the Presidential Primary, originally scheduled in April, was at discretion rescheduled to coincide with a June 23 election, this Court has discretion to direct that the Presidential Primary take place on some other date later in June or during July.  There is no requirement in law that the Presidential Primary be conducted on June 23, so long as it takes place an adequate amount of time prior to the Democratic Convention on August 17.

54. To protect the voters against COVID-19, this Court also has discretion under Executive Order 202-15 to order that the Presidential Primary take place entirely by mail-in vote.

**FIRST CAUSE OF ACTION**

**1st and 14th Amendments, U.S. Const. Amend I and XIV, 42 U.S.C. § 1983, 28 U.S.C. 2201, 2202**
**UNDUE BURDEN ON AND DENIAL OF THE RIGHT TO VOTE**

55. Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs of this Complaint.

56. Under the Fourteenth Amendment, "No State shall . . . deny to any person within its

jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Under the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or **abridging the freedom of speech**, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (**emphasis added)**.

57. Defendants' April 27 decision to cancel the Presidential primary violates Plaintiffs' equal protection of the laws in that it arbitrarily denies them the rights they secured under the NY Election Law.  Importantly, it also denies them the right to cast their votes for duly qualified candidates. Effectively, Defendants have denied Plaintiffs right to free "speech" under the First Amendment of the US Constitution by denying them meaningful ballot access to the June 23 primary.

58. Any law, such as § 2-122-A(13) of the Election Law enacted *ex post facto*, that purports to give Defendants the authority to cancel the election violates the Fourteenth Amendment. The same is true for the First Amendment concerning Plaintiffs' right to free speech.

59. The Defendants have neither a compelling interest, important interest, or even a legitimate interest in cancelling the June 23 election and removing Plaintiffs from the June 23 ballot, given that they are allowing other Federal and State election to occur on the same date, therefore invalidating their argument that the decision was made for health and safety reasons.

60. Defendants have failed to protect the voting rights of Plaintiffs and all other similarly situated candidates and New York State voters.

61. Defendants' decision to cancel the election and remove ALL candidates who had made the financial and practical decision to "suspend" their campaigns effectively eliminated ALL choices other than an individual who has been credibly accused of rape by a former employee.  Plaintiffs therefore have had their right to vote for the candidate of THEIR choice in violation of the Fourteenth Amendment to the Constitution, based on the arbitrary and capricious nature of their decision, and not based on any actual set of facts

62. While defendants have claimed their actions are motivated by concerns for public health and safety, had this truly been the case they would have also cancelled the other Federal and State elections currently scheduled for the same date.

63. Defendants have violated and will continue to violate the Fourteenth Amendment equal protection rights of Plaintiffs if the June 23, 2020 presidential primary election is permanently cancelled.

64. Under the *Anderson-Burdick* balancing test, a court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the

plaintiff's rights.'" See, *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

65. Because of the COVID-19 pandemic, it is reasonable to take precautions to allow for safe voting, but such decisions cannot arbitrarily pertain to some elections and not other elections as the Defendants have done here.

66. Defendants cannot provide any colorable justification as to why they cancelled the presidential primary and not other federal or state primary elections. Defendants' actions have created a dangerous precedent and seem to be motivated solely by politics rather than their solemn duty to uphold the law.

67. By allowing voters to vote absentee by mail, it is not sufficient for Defendants to argue that cancelling elections entirely in twenty counties where there are no federal or state primaries on June 23, the threat of COVID-19 is materially reduced as compared to the other 42 more densely populated districts where federal and state elections will still take place.

68. It is clear that Defendants' action to cancel the presidential primary is an ill-conceived political decision, rather than a rational decision to protect voter and worker health and safety (especially given that everyone can vote by mail due to COVID-19).

69. In summary, the challenged law (granting Defendants authority to act) and the challenged decision by Defendants to cancel the election, as applied to and during the extraordinary conditions of the COVID-19 pandemic, are unconstitutional infringements upon the voting

rights of Plaintiffs, unsupported by a state interest sufficient to justify the resulting burdens

on the right to vote, and thus violative of the First and Fourteenth

Amendments.

### SECOND CAUSE OF ACTION

**14th Amendments, U.S. Const. Amend XIV, 42 U.S.C. § 1983**
**DENIAL OF PROCEDURAL DUE PROCESS**

70. Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs of

this Complaint.

71. The Due Process Clause of the United States Constitution prohibits the states from

depriving "any person of . . . liberty . . . without due process of law." U.S. Const. Amend.

XIV, § 1. Determining which protections are due in a given case requires a careful analysis

of the importance of the rights and the other interests at stake. See *Mathews v. Eldridge*,

424 U.S. 319, 334–35 (1976); *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1192

(9th Cir. 2015). Courts must first consider "the nature of the interest that will be affected"

by the government's action as well as the "degree of potential deprivation that may be

created" by existing procedures. *Nozzi*, 806 F. 3d at 1192–93.

Second, "courts must consider the 'fairness and reliability' of the existing procedures and

the 'probable value, if any, of additional procedural safeguards.'" Id. at 1193 (quoting

*Mathews*, 424 U.S. at 343). Finally, courts must consider "the public interest, which

'includes the administrative burden and other societal costs that would be associated with'

additional or substitute procedures. Id. (quoting Mathews, 424 U.S. at 347). Overall, "due

process is flexible and calls for such procedural protections as the particular situation

demands." Mathews, 424 U.S. at 334, (quotation and citation omitted).

72. Defendants' action, maintaining some elections and cancelling those which directly impugn the rights of Plaintiffs in this matter, must comport with due process, which it is does not.

73. "When an election process 'reache[s] the point of patent and fundamental unfairness,' there is a due process violation." *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1183 (11th Cir. 2008) (quoting *Roe v. Alabama*, 43 F.3d 574, 580 (11th Cir. 1995))

74. In cancelling elections in which EVERY plaintiff planned to vote, but allowing others to occur on the same day, and allowing solely "presumptive nominee" Joe Biden's name on the June 23 ballot, it is clear Defendants' action is fundamentally unfair, unjust and illegal. The nature of the interest at stake in this case, namely the right to vote and to have that vote count, is the most sacred liberty interest of all because it preserves all other basic civil, human, economic and political rights.  Indeed, to quote esteemed Judge Learned Hand, of THIS court, the interest here is "…closely akin to, if indeed it is not the same as, the interest protected by the First Amendment; **it presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly; but we have staked upon it our all."**   United States v. Associated Press, 52 F. Supp. 362 (S.D.N.Y. 1943) at 372, emphasis added.

75. But the challenged law enabling the Defendants to act (§2-122-A(13) of the NY Election Law) and the challenged decision of the Defendants on April 27, 2020, the Resolution, threaten to deprive Plaintiffs and all New York voters of this right. Considering the tragedy and risk presented by COVID-19, Defendants must exercise caution, as they have, by allowing voters to cast their ballots in the June 23, 2020 election by mail. However, the challenged law and action by Defendants as applied under the extraordinary conditions of the COVID-19 pandemic, are entirely inadequate in all other respects, in that they cancelled Plaintiffs' election but not others, and allowing the presidential primary to continue solely with the "presumptive" nominee, denying everyone else's rights, particularly Plaintiffs and all others similarly situated as voting members of the electorate. It would be relatively minimal burden to the State to not violate Plaintiffs' and everyone else's voting rights, and simply include all candidates on the June 23 ballot, thereby not violating Plaintiffs' rights. The §2-122-A(13) of the NY Election Law amended only April 3 was passed *ex post facto*, effectively hidden in the darkness of an appropriations bill, and is a *prima facie* denial of procedural due process for our State's and country's election fairness and integrity, including the rights of Plaintiffs.

### THIRD CAUSE OF ACTION

### NY STATE DUE PROCESS, RIGHT TO VOTE,<br>DENIAL OF PROCEDURAL DUE PROCESS<br>New York State, Constitution1821, Article 2

76. Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs of this Complaint.

77. The challenged §2-122-A(13) of the NY Election Law and the challenged decision of the Defendants' on April 27, 2020, the Resolution, violate Plaintiff's rights under the New York Constitution under Article II.   Defendants' actions violate Plaintiffs' right to vote, and provide no justifiable reason to allow the election for certain representatives in government (congressional, State Senate, State Assembly) and not others, arguably more important (Presidential). Defendants' should know that under the New York constitution, it is not legal to add policy into appropriations bills, such as how §2-122-A(13) of the NY Election Law became "law" on April 3. Defendants' should know this "law" was slipped into effect in the dark of night, and for whatever ill-conceived political or other reason, is not valid law under the NY or US Constitutions.

78. Defendants' actions are arbitrary and whimsical and provide no justification or valid reason. Moreover, they favor one sole candidate who is allowed to remain on the ballot, and must be therefore subject to strict scrutiny.

79. Moreover, Defendants have violated Plaintiffs' due process rights under the New York State Constitution, as amended.

**COUNT IV (Facial Constitutionality—New York State Election Law Section 122-A(13))**

80. Plaintiffs hereby repeat, re-allege, and incorporate by reference all foregoing

paragraphs.

81. Election Law Section 122-A(13) is facially unconstitutional in that it is not narrowly tailored to a compelling or even a significant government interest, nor provides the least restrictive alternative, for the putative goal of protecting the electorate against COVID-19.

WHEREFORE, Plaintiffs respectfully requests that this Court award:

(a)     Declaratory Judgment that Defendants' have violated Plaintiffs' rights under 42 U.S.C. § 1983, and the First and Fourteenth Amendments;

(b)     An order directing Defendants to reinstate the Presidential Primary, and restoring Plaintiffs to the ballot, on a date in June or July to be selected by this Court, and further directing that to protect voters from COVID-19, that all voting take place by mail-in ballot;

(c)     Costs and reasonable attorneys' fees; and

(d)     Such other and further relief as law or equity may provide.

Dated: New York, New York May 6, 2020

__/s/ Walter H. Hackett, III_____

Walter H. Hackett, III (*pro hac vice application pending*)
Law Office of Walter H. Hackett
Attorney(s)s for Plaintiffs